UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISE MORRIS,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | ) Case No.: 1:13-cv-00189 - JLT<br>)<br>) ORDER DIRECTING ENTRY OF JUDGMENT IN<br>) FAVOR OF DEFENDANT, THE COMMISSIONER<br>) OF SOCIAL SECURITY, AND AGAINST<br>) PLAINTIFF LISE MORRIS<br>)<br>) (Doc. 18)<br>) |

Lise Morris ("Plaintiff") asserts she is entitled benefits under Titles II and XVI of the Social Security Act. (Doc. 1) Plaintiff seeks judicial review of the decision denying her applications for benefits, asserting the administrative law judge erred in evaluating the medical evidence and in finding that she was able to return to past relevant work. For the reasons set forth below, the administrative decision is **AFFIRMED**.

**PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on April 6, 2010, alleging disability beginning March 1, 2010. (Doc. 11-6 at 4, 13.) Her applications were denied initially and upon reconsideration. (Doc. 11-3 at 11.) After requesting a hearing, Plaintiff testified before the administrative law judge ("ALJ") on July 19, 2011. (*Id*. at 30.) The ALJ found Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on September 2, 2011. (*Id.* at 11-23.) Plaintiff requested review by the Appeals Council of Social

Security, which denied Plaintiff's request on December 15, 2012. (*Id.* at 2-4.) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish his disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

**DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f); 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion hearing testimony. 20 C.F.R. §§ 404.1527, 416.927.

**A.   Medical Opinions**[1]

On November 15, 2007, Dr. Jonathan Cheang performed a consultative psychiatric evaluation upon the request of Plaintiff's primary care physician. (Doc. 11-8 at 2.) Plaintiff reported she "ha[d] been dealing with depression for the past 20 years and never felt better." (*Id.*) She told Dr. Cheang that she "self-medicated with methamphetamine and alcohol," and "abused methamphetamine for about 15 years," until quitting approximately 4 ½ years prior to the examination. In addition, Plaintiff said she could not tolerate crowds, and going to grocery stores caused her to "start shaking and feeling on edge." (*Id.*) Dr. Cheang observed that Plaintiff appeared "a little bit tense" and her thought process was "generally goal-directed." (*Id.* at 4.) Dr. Cheang diagnosed Plaintiff with major depressive disorder, recurrent, moderate, without psychotic features; anxiety disorder, not otherwise specified; and polysubstance dependence, in full and sustained remission. He gave Plaintiff a GAF score of 60.[2] (*Id.*)

Dr. Geradine Gauch completed a comprehensive psychiatric evaluation on August 28, 2010. (Doc. 11-8 at 35.) Plaintiff reported that she was "mentally unstable with depression, dissociative identity disorder, migraines, fibromyalgia, arthritis, irritable bowel syndrome, hypothyroidism and

---

[1] Plaintiff does not challenge the ALJ's evaluation of the medical evidence related to her physical limitations. Therefore, only the medical opinions related to Plaintiff's mental impairments are summarized herein by the Court.

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.). A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.*

diabetes." (Doc. 11-8 at 35.) Dr. Gauch noted:

> The claimant reported having been depressed for the past 20 years. She was diagnosed in 1991. She was diagnosed with dissociative identity disorder six years ago by a counselor at her church, after having several episodes of blacking out; things happened that she was unaware of until the next morning, when she would see the damage to herself and her house…. These episodes began in 1993, and occurred most recently about 2-1/2 months ago. She broke possessions that were significant to her during these episodes. She has ripped pictures off the wall, fractured her hand punching the wall, tearing at her hair and scratching at herself. These occur when she is under significant stress, two to three times a year for the past seven years in which she has been free of drug abuse.

(*Id.* at 36.) Plaintiff told Dr. Gauch that she had attempted suicide twice in her past, and had a history of alcohol and drugs, including marijuana, mushrooms, cocaine, and methamphetamine. (*Id.* at 37.)

Upon examination, Dr. Gauch observed that Plaintiff's "[s]tream of mental activity was within normal limits," and her "[t]hought content was appropriate." (Doc. 11-8 at 38.) Further, Dr. Gauch found that Plaintiff's "recent and remote memory were intact" because Plaintiff remembered what she ate for breakfast and "was able to recall 3/3 items immediately and 2/3 items after several minutes." (*Id.*) Dr. Gauch determined Plaintiff's concentration "was within normal limits," because she "was able to perform a simple three-step command successfully." (*Id.* at 38-39.) Dr. Gauch found that Plaintiff's symptom severity was in "the mild range," and gave her a GAF score of 60. (*Id.* at 40.) Dr. Gauch concluded:

> The claimant is not capable of managing her funds.
>
> The claimant's ability to understand and remember very short and simple instructions is good.
>
> The claimant's ability to understand and remember detailed instructions is fair.
>
> The claimant's ability to maintain concentration and attention is good.
>
> The claimant's ability to accept instructions from a supervisor and respond appropriately is fair.
>
> The claimant's ability to sustain an ordinary routine without special supervision is fair.
>
> The claimant's ability to complete a normal workday and workweek without interruptions at a constant pace is fair, influenced primarily by personality and substance abuse.
>
> The claimant's ability to interact with coworkers is fair, influenced primarily by personality disorder.
>
> The claimant's ability to deal with the various changes in the work setting is fair.

(Doc. 11-8 at 40-41.)

On September 22, 2010, Dr. Robert Paxton completed a psychiatric review technique form. (Doc. 11-8 at 42-50.) Dr. Paxton opined Plaintiff suffered from non-severe personality and substance addiction disorders. (*Id.* at 42.) According to Dr. Paxton, Plaintiff had a "mild" restriction in her activities of daily living; "mild" difficulties in maintaining social functioning; and "mild" difficulty with maintaining concentration, persistence, or pace. (*Id.* at 50.)

**B.     Administrative Hearing Testimony**

Plaintiff testified at a hearing before the ALJ on July 7, 2011. (Doc. 11-3 at 30.) She reported that she was unable to work because she suffered from migraines; depression; borderline personality disorder; and pain in her neck, shoulders, back, and hips. (*Id.* at 34.)

Plaintiff said she had "three episodes in the last year" from her dissociative identity disorder, where she would black out and "go into a rage." (Doc. 11-3 at 34.) She said there was no drug use involved in the episodes, and reported she had "been clean and sober for eight years." (*Id.* at 35.) However, Plaintiff said she was told that she drank alcohol during one of the episodes, and Plaintiff estimated that she drank "a beer every couple of months." (*Id.*) Plaintiff said that her husband "told [her] most of what's happened and he said that he's had to use severe force to try to pin [her] down" during the episodes. (*Id.* at 37.)

She stated that she attended counseling sessions at her church, where she was able to speak to her different identities, called "alters." (Doc. 11-3 at 39.) Plaintiff said that the counselor would bring out the alters to try to help identify when Plaintiff had been traumatized and to help Plaintiff "not to have so many episodes." (*Id.*) In addition to the counseling at her church for eight years, Plaintiff said she received help from a counselor at Paradise Medical Center, who prescribed psychotropic medication. (*Id.* at 40, 44.) Plaintiff reported that her medication dosage had changed the month prior to the hearing, and she was "feeling a little bit better." (*Id.* at 43.)

Plaintiff testified that she last worked as a secretary for a month and a half, prior to which she worked as the childcare coordinator at her church. (Doc. 11-3 at 44, 46.) She reported that the childcare coordinator position required her to work three or four days a week, about four hours at a time. (*Id.* at 48.) Plaintiff did not believe she would be able to work as the childcare coordinator due to her "[f]ear of getting in trouble" for not doing what she was supposed to be doing, and "fear that [she]

might have a DID episode." (*Id.* at 47.) She said depression "held [her] back from even being able to try to go out and do anything." (*Id.* at 48.) Plaintiff reported her depression had "gotten worse" since she stopped working at the church. (*Id.* at 52.) She explained that she cried "quite a bit," and could spend an entire day in bed staring at her television. (*Id.*)

**C.     The ALJ's Finding**

Pursuant to the five-step process, first the ALJ determined that Plaintiff did not engage in substantial gainful activity after her alleged onset date of March 1, 2010. (Doc. 11-3 at 14.) Second, the ALJ found Plaintiff has the following severe impairments: migraine headaches, hypertension, fibromyalgia syndrome, irritable bowel syndrome, a history of kidney stones, obesity, a major depressive disorder, anxiety disorder, polysubstance dependence in full and sustained remission, and a dissociative identity disorder. (*Id.*) At step three, the ALJ found these impairments did not meet or medically equal a Listing. (*Id.*)

After evaluating record, the ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform a wide range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (Doc. 11-3 at 15.) Specifically, the ALJ determined: "She can sit, stand, and walk six hours each in a normal workday. She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can only occasionally climb ladders, ropes, and scaffolds. She can frequently, but not constantly, understand, remember, and carry out complex and detailed job instructions." (*Id.*) With this RFC, the ALJ opined Plaintiff was "capable of performing past relevant work as a church coordinator, most closely identified by the Dictionary of Occupational Titles as Day Care Center Director." (*Id.* at 21.) Further, the ALJ found Plaintiff was able to perform "other jobs that exist in significant numbers in the national economy." (*Id.* at 22.) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 23.)

**DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred in his evaluation of the medical evidence by failing to adopt all of the opinions of Dr. Gauch in the RFC, and by finding Plaintiff was able to perform past relevant work because her work with the church "was not substantial gainful activity." (Doc. 18 at 4-7, emphasis omitted.) On the other hand, Defendant argues the ALJ's findings were free of reversible error and

supported by substantial evidence. (Doc. 19 at 5-8.) Therefore, Defendant contends that the ALJ's decision should be affirmed. (*Id.* at 8.)

### A.     The opinion of Dr. Gauch

The ALJ gave "significant weight" to the opinion of Dr. Gauch though finding that the opinions were "supported by her very minimal objective findings, as well as the very minimal mental treatment that persisted only a short time, with large gaps in between." (Doc. 11-3 at 20.) The ALJ observed:

> Dr. Gauch found that, while the claimant was incapable of managing her own funds, she had a good ability to understand and remember very short and simple instructions and a fair ability to understand and remember detailed instruction. She had a good ability to maintain attention and concentration. She had a fair ability to accept instructions from supervisors, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruptions. She had a fair ability to interact with co-workers and deal with various changes in the work setting. She had a fair likelihood of emotionally deteriorating in the work environment. [Citation.] Dr. Gauch found that the claimant had at least a fair ability to perform all mental work tasks.

(Doc. 11-3 at 20, citation omitted.)

Plaintiff argues that "[t]he ALJ erred by relying upon the report of Dr. Gauch to formulate his RFC assessment" because the ALJ "fail[ed] to explain why he only uses parts of the doctor's opinions and not all of them." (Doc. 18 at 5, emphasis omitted.) Plaintiff acknowledges that the ALJ gave substantial weight to the opinion of Dr. Gauch, but argues the ALJ failed to "incorporate into this RFC the more limiting parts of the assessment which indicate that her other mental abilities are only **fair**." (*Id.* at 19, emphasis in original.) Plaintiff asserts that if "the ALJ incorporated [Dr. Gauch's] opinions fully, then Plaintiff would have mental limitations beyond just the ability to perform simple, routine tasks." (*Id.*)

On the other hand, Defendant argues that the opinion of Dr. Gauch was "properly integrated" into the RFC assessment. (Doc. 19 at 7, emphasis omitted.) Defendant asserts: "The word fair implies an ability to do a task at least to a fair degree, whereas words like occasional or unable implies some restriction in ability to perform a task. Put another way, a fair performance is logically still a complete performance, while an occasional performance implies some stoppage in the performance." (*Id.* at 8.) According to Defendant, "the ALJ did what the Ninth Circuit directs, reviewing the record as a whole and translating information regarding impairments into a concrete assessment of Plaintiff's capacity to

work." (*Id.*, citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Defendant concludes that "ALJ's translation of Dr. Gauch's opinion is consistent and reasonable," when "viewed … in context of the record as a whole." (*Id.*)

Significantly, as Defendant argues, courts have examined the definition of the word "fair," and found that it does not indicate an activity is precluded. The Eighth Circuit explained:

> The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

*Cantrell v. Apfel*, 231 F.3d 1104, 1107-08 (8th Cir. 2000). The definition set forth in *Cantrell* was adopted by the Sixth Circuit in *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) and has been cited with favor by the Ninth Circuit. *See Chang v. Comm'r of Soc. Sec. Admin.*, 507 Fed. App'x. 698, 699 (2013). In *Chang*, the Ninth Circuit rejected the claimant's argument that "'fair is a term of art with a definite and constant meaning," and determined "the ALJ did not err in concluding that when [the physician] used the word 'fair' to describe the [claimant's] abilities in a particular area, he implied no disabling impairment in that area." *Id.* (citing *Cantrell*, 231 F.3d at 110708).

Here, Dr. Gauch opined Plaintiff's ability to understand and remember short and simple instructions was "good," while her ability with detailed instruction was "fair." (Doc. 11-8 at 40.) In addition, Dr. Gauch determined Plaintiff's ability to maintain attention and concentration was "good." (*Id.*) Notably, Dr. Gauch opined also that Plaintiff's symptoms were "within the mild range" and her "concentration ability was within normal limits." (*Id.* at 38, 40.) Thus, Dr. Gauch did not believe Plaintiff was precluded from understanding, remembering and carrying out detailed instructions. *See Chang*, 507 Fed. App'x at 699. Further, as noted by the ALJ, Dr. Paxton opined Plaintiff had "no more than mild limitations in any area of mental functioning." (Doc. 11-3 at 21.) The ALJ reviewed this evidence and determined that Plaintiff was not precluded from complex and detailed job instructions, although there was some limitation. Consequently, the ALJ found Plaintiff could "not "constantly constantly, understand, remember, and carry out complex and detailed job instructions." (Doc. 11-3 at 15.) Because the ALJ carried the obligation set forth in *Cantrell* to evaluate the Dr. Gauch's opinions in context of the entire record, which were incorporated in the RFC, and the ALJ did not err.

### B.     The ALJ's step four and five determinations

At step four of the evaluation, a claimant has the burden of proof at step four of the sequential analysis to establish that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002). Past relevant work is work performed in the last 15 years that lasted long enough to learn it, and was substantial gainful employment. SSR 82-61, 1982 SSR LEXIS 31.[3] The ALJ is not required to make "explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). The Ninth Circuit explained, "[a]lthough the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.*, 249 F.3d at 844.

At step four, the ALJ found Plaintiff was "capable of performing past relevant work as a church coordinator, most closely identified by the Dictionary of Occupational Titles as Day Care Center Director." (Doc. 11-3 at 21.) Plaintiff asserts that the ALJ erred "by finding that [she] is able to return to her past relevant work when her work was not substantial gainful activity." (Doc. 18 at 4, emphasis omitted.) Plaintiff argues she did not perform the work as church coordinator at the level of substantial gainful employment which is "reflected in her earnings." (*Id.* at 5.) She explains that she "testified to working only four hours per day, four days per week for $10 per hour," which "totals $693.33 per month." (*Id.*) Plaintiff argues the ALJ committed reversible error because he did not address whether her work at the church qualified as substantial gainful employment, and "fail[ed] to support his finding with a determination that Plaintiff has the residual functional capacity for work activity on a regular and continuing basis." (*Id.*)

The ALJ reviewed the job description of day care center director in the *Dictionary of Occupational Titles*[4], which the ALJ found was "[t]he closest job that fit the claimant's description" of

---

[3] Although Social Security Rulings issued by the Commissioner to clarify regulations and policies do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

her job duties as the childcare coordinator. (Doc. 11-3 at 22.) The ALJ noted the description classified the work as sedentary, and because Plaintiff was "able to perform light work with only occasional climbing of ladders, ropes, and scaffolds, her physical abilities fit within the job description." (*Id.*) Also, the ALJ found Plaintiff retained an ability to "frequently understand, remember, and carry out complex or detailed job instructions," and as a result "her mental limitations [fell] within the description" provided in the *Dictionary of Occupational Titles* and the *Selective Characteristics of Occupations*. (*Id.*) Accordingly, the ALJ concluded Plaintiff was able to perform her past work "as it is generally performed." (*Id.*) Although the ALJ failed to make any findings regarding whether Plaintiff's work as a childcare coordinator was substantial gainful activity, the ALJ carried his burden to support the conclusion that Plaintiff is able to perform the work by discussing the job requirements, and finding her physical and mental limitations did not preclude the work. Notably, Plaintiff does not dispute the ALJ's finding that she is able to perform this work as generally performed.

Moreover, the ALJ continued the analysis to step five, which is reached if a claimant has no past relevant work or is unable to perform her past relevant work. *See* 24 C.F.R §§ 404.1520(g) and 416.920(g). The ALJ observed that Plaintiff's mental limitations "have little or no effect on the occupational base of unskilled light work." (Doc. 11-3 at 23.) The ALJ explained that "even if the claimant was limited to performing simple, routine tasks, she would not be prohibited from performing unskilled work." (*Id.*) As a result, the ALJ concluded Plaintiff was able to perform "other jobs that exist in significant numbers in the national economy." (*Id.* at 22-23.) Thus, the validity of the ALJ's conclusion that Plaintiff is able to perform work is not negated, and the ALJ's failure to address whether the work was "substantial gainful activity" was harmless. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not "negate the validity of the ALJ's ultimate conclusion"); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (same).

### CONCLUSION AND ORDER

As discussed above, the ALJ incorporated the opinions of Dr. Gauch and applied the proper legal standards in formulating the RFC. Further, the ALJ's failure to determine whether Plaintiff's work as a childcare coordinator qualified as substantial gainful activity is harmless, because the ALJ

supported his conclusions that Plaintiff is able to perform the work of a day care center director as generally performed and other work in the national economy, and his error "does not negate the validity" of these findings, which are not challenged by Plaintiff. *See Batson*, 359 F.3d at 1197. Thus, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The administrative decision is **AFFIRMED**; and
2. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant, the Commissioner of Social Security, and against Plaintiff Lise Morris.

IT IS SO ORDERED.

Dated:   **August 22, 2014**                              **/s/ Jennifer L. Thurston**
                                                         UNITED STATES MAGISTRATE JUDGE